# EXHIBIT A

# PROMISSORY NOTE

February 1, 2022

**ANGELA WOODS** AND **DAVY WOODS**

309 ROSS CT WYNCOTE, PA 19095

1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development, and its successors and assigns.

2. BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of fifty-three thousand eight hundred thirty-seven and 98/100 Dollars (U.S. 53,837.98), to the order of the Lender.

3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses, which might result if Borrower defaults under this Note.

4. MANNER OF PAYMENT

(A) Time

On, February 1, 2052 or, if earlier, when the first of the following events occurs:

(i) Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii) The maturity date of the primary Note has been accelerated, or

(iii) The primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary, or

(iv) The property is not occupied by the purchaser as his or her principal residence.

(B)   Place

Payment shall be made at the FHA, Attention: Security Held Loan Servicing, 2000 N Classen Blvd #3200, Oklahoma City, OK 73106 or any such other place as Lender may designate in writing by notice to Borrower.

5.  BORROWER'S RIGHT TO REPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

7.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

**Sign here to execute Promissory Note** ➡ _____Angela Woods_____
ANGELA WOODS
(Must be signed exactly as printed)

**Sign here to execute Promissory Note** ➡ _____Davy Woods_____
DAVY WOODS
(Must be signed exactly as printed)

**Recording Requested By:**
Freedom Mortgage Corporation
907 Pleasant Valley Avenue
Mount Laurel, NJ 08054

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect Document Solutions
6860 North Argonne Street, Unit A
Denver, CO 80249

This document was prepared by Freedom Mortgage Corporation, Michele Rice, 10500 Kincaid Drive, Suite 111, Fishers IN 46037-9764, (855) 690-5900

Dated Date: _____

_____Space Above This Line For Recording Data

**Original Principal Amount:** $223,667.00
**Unpaid Principal Amount:** $215,351.90
**New Principal Amount:** $211,434.37
**Total Capitalized Amount:** $49,920.45

## LOAN MODIFICATION AGREEMENT
(FHA-Insured) (FHA COVID-19 Combination Partial Claim and Loan Modification)

This Loan Modification Agreement ("Agreement") between **ANGELA WOODS AND DAVY WOODS HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY** whose address is 309 ROSS CT, WYNCOTE, PA 19095 ("Borrower" or "I"[1]) and **FREEDOM MORTGAGE CORPORATION** whose address is 907 Pleasant Valley Avenue, Mount Laurel, NJ 08054 ("Lender"), is effective 02/01/2022, and amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), made by **ANGELA WOODS AND DAVY WOODS HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY** to **MERS AS NOMINEE FOR CITYWORTH MORTGAGE LLC** for $223,667.00 and interest, dated 06/20/2017 and recorded on Date 06/23/2017 in Book or Liber 14360, at page(s) 01252 or as Document/Instrument Number 2017045374, in the Records of **Montgomery, PENNSYLVANIA,** and (2) the Note bearing the same date as and secured by the Security Instrument, which was entered into as security for the performance of the Note and encumbers the real and personal property described and defined in the Security Instrument as the "Property," located at **309 ROSS CT WYNCOTE, PA 19095.** *See Exhibit A for Legal Description*

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "Borrower" or "I." For purposes of this document, words signifying the singular (such as "Borrower" or "I") shall include the plural (such as "Borrowers" or "we") and vice versa where appropriate.

Page 1

**Important Disclosures**: The Federal Housing Administration (FHA) requires that Lender provide you with information designed to help you understand the modified mortgage terms that are being offered to you. Lender is required to provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage in a timely manner to enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 below continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents. If there is more than one borrower or mortgagor executing this document, each is referred to as "I". Words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

1. **My Representations**. I certify, represent to Lender, and agree as follows:

    A. I live in, and plan to continue to live in, the Property as my principal residence. The Property has not been condemned and has no material adverse physical condition(s). The Property has no more than four units.

    B. I am not a borrower on any other FHA-insured mortgage.

    C. Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property after I signed the Loan Documents.

    D. If I received a discharge in a Chapter 7 Bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the required subordinate mortgage loan (also called a Partial Claim Note and Security Instrument). I have reviewed and approved the terms of such subordinate loan.

    B. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement has not been met.

    C. Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) Lender will have all of the rights and remedies provided by the Loan Documents.

Page 2

D. The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred.

3. **The Modification.** If all of my representations in Section 1 above continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on 02/01/2022 (the "Modification Effective Date") and all unpaid late charges, penalties, and fees that remain unpaid will be waived. If I have failed to make any payments that are a precondition to this modification, this modification will not take effect.

   A. The new Maturity Date will be: 02/01/2052

   B. The new principal balance of my Note will be $211,434.37 (the "New Principal Balance"). In servicing your loan, the Lender may have incurred third-party fees or charges that were not included in the terms of this Agreement. If so, these fees and charges will appear on your monthly statement under "Fees and Charges." These fees and charges will not accrue interest or late fees. You may pay these fees and charges at any time. If not previously paid, you must pay these fees and charges at the earliest of (1) the date you sell or transfer an interest in the Property, (2) the date you pay the entire New Principal Balance, or (3) the Maturity Date.

   C. I promise to pay the New Principal Balance, plus interest, to the order of Lender.

   D. The annual interest rate on the New Principal Balance will be 3.250%, beginning 02/01/2022, both before and after any new default. This fixed interest rate will remain in effect until the principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

   E. On 03/01/2022 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $1,928.03 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $920.18, plus the current required escrow payment of $1,007.85. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

   F. I will be in default if I do not comply with the terms of the Modified Loan Documents.

4. **Additional Agreements.** Lender and I agree to the following:

   A. I accept the risks of entering into this Agreement. These risks include (but are not limited to)

      (1) The subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The subordinate lien may also make it more difficult to get additional subordinate lien financing.

(2) My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

B. I authorize Lender to attach an Exhibit A to this loan modification, which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

C. All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender waived this requirement in writing.

D. This Agreement supersedes the terms of any modification, forbearance, trial period plan, or workout plan that I entered into with Lender before the date of this Agreement.

E. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect and I will comply, with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may change in accordance with the terms of my Modified Loan Documents.

F. The Modified Loan Documents are duly valid, binding agreements, enforceable in accordance with their terms and are hereby ratified and confirmed.

G. I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title insurance product(s) and/or any subordination agreement(s) that are necessary or required by Lender's procedures and/or the Modification to ensure that the Mortgage, as modified by this Agreement, is in first-priority lien position and is fully enforceable. The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.

H. I know that I am only entitled to loss mitigation terms that comply with the Modification. Therefore, if Lender discovers any error in the terms of this Agreement or in the required subordinate mortgage loan, I authorize the Lender to advise me of the error. If I do not accept the corrected terms, at Lender's option, this Agreement becomes void and of no legal effect. If I accept the corrected terms, I will execute and promptly return to Lender the revised and additional documents that will (1) consummate the intended terms and conditions of this Agreement and/or (2) correct the terms and conditions of this Agreement (a "Corrected Agreement"). If I do not sign and deliver a Corrected

  Agreement or any additional document required by Lender to comply with the Modification, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I may not be eligible for the Modification.

I. Lender will collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information"). In addition, I consent to the disclosure of my Personal Information and the terms of this Agreement by Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s), (2) companies that perform support services for the Modification, and (3) any HUD-certified housing counseling agency.

J. If any document related to the Loan Documents and/or this Agreement is lost, misplaced, or otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documents Lender deems necessary ("Replacement Documents").

  I will deliver the Replacement Documents to Lender within ten days after I receive Lender's written request for such Replacement Documents.

Page 5

By SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**Sign here to execute Modification Agreement** ➡ _Angela Woods_
Angela Woods
(Must be signed exactly as printed)
01 / 25 / 2022
Signature Date (MM/DD/YYYY)

**Sign here to execute Modification Agreement** ➡ _Davy Woods_
Davy Woods
(Must be signed exactly as printed)
01 / 25 / 2022
Signature Date (MM/DD/YYYY)

_[Space below this line for Acknowledgement]_

STATE OF __PENNSYLVANIA__
COUNTY OF __MONTGOMERY__
On the __25__ day of __JANUARY__ in the year __2022__ before me, the undersigned, a Notary Public in and for said State, personally appeared Angela Woods and Davy Woods, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument.

WITNESS my hand and official seal.

_Akia M Pleasant_
(Signature)
Notary Public: __AKIA M PLEASANT__
(Printed Name)
My commission expires: __4-17-2022__    (Notary Public Seal)
(Please ensure seal does not overlap any language or print)

```
Commonwealth of Pennsylvania - Notary Seal
AKIA M. PLEASANT, Notary Public
Philadelphia County
My Commission Expires April 17, 2022
Commission Number 1223217
```

Page 6

# EXHIBIT A

The following described property situated in the County of Montgomery, Commonwealth of Pennsylvania, to-wit:

ALL THAT CERTAIN Unit of piece of land, with the buildings and improvements erected or to be erected thereon, situate in the Township of Cheltenham, County of Montgomery, Commonwealth of Pennsylvania, being a part of "Wyngate, a Planned Community", a Declaration thereof being dated 6/16/2008 and
recorded 6/23/2008 In Deed Book 5697 page 643, bounded and described according to a Declaration Plat entitled "Wyngate, a Planned Community", drawn by Taylor Wiseman and Taylor Engineering/ Surveyors/ Scientists, Chalfont, Pennsylvania, as an Exhibit to the Fifth Amendment thereto the Declaration of
Wyngate, a Planned Community, by the Fairways at Cedarbrook Hills, L.P., a Pennsylvania Limited Partnership, the Declarant, dated 1/17/2013 and recorded 1/25/2013 at Norristown, Pennsylvania in Deed Book 5862 page 937.

BEING Unit No. 2704 Building 27

Being the same property as conveyed from The Fairways and Cedarbrook Hills, L.P., A Pennsylvania Limited Partnership, by Cedarbrook Fairways Development LLC, General Partner, by Taylor/Epstein Investment Fund, LLC, Managing Member to Angela Woods and Davy Woods, Husband and Wife, as Tenants by the Entirety as set forth in Deed Instrument #2017045373 dated 06/12/2017, recorded 06/23/2017, Montgomery County, PENNSYLVANIA.

Page 7

**Recording Requested By:**
Freedom Mortgage Corporation
907 Pleasant Valley Avenue
Mount Laurel, NJ 08054

**After Recording Return To:**
Freedom Mortgage Corporation C/O:
Mortgage Connect Document Solutions
6860 North Argonne Street, Unit A
Denver, CO 80249

This document was prepared by: Freedom Mortgage Corporation, Michele Rice, 10500 Kincaid Drive, Suite 111, Fishers IN 46037-9764, (855) 690-5900

**Dated Date:** _____

_____Space Above This Line For Recording Data_____

## SUBORDINATE MORTGAGE

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on 1st day of February, 2022.

The Mortgagor is **ANGELA WOODS AND DAVY WOODS HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY**
Whose address is 309 ROSS CT WYNCOTE, PA 19095 ("Borrower").

This Security Instrument is given to the Secretary of Housing and Urban Development, its successors and assigns whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of fifty-three thousand eight hundred thirty-seven and 98/100 Dollars (U.S. 53,837.98). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on February 1, 2052.

This SECURITY INSTRUMENT secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 2 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with the power of sale the following described property located in **Montgomery** County, State of PENNSYLVANIA which has the address of 309 ROSS CT WYNCOTE, PA 19095, ("Property Address") more particularly described as follows: *See Exhibit A for Legal Description*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

1. **PAYMENT OF PRINCIPAL.** Borrower shall pay when due the principal of the debt evidenced by the Note.

2. **BORROWER NOT RELEASED; FORBEARANCE BY LENDER NOT A WAIVER.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

4. **NOTICES.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 10410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5. **GOVERNING LAW; SEVERABILITY.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be

given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

6.  **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

8.  **ACCELERATION; REMEDIES.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument unless applicable law provides otherwise. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding, and sale of the Property. The notice further shall inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender to the extent permitted by applicable law shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including without limitation reasonable attorney's fees and costs of title evidence.

8.  **RELEASE.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by applicable law.

9.  **WAIVERS.** Borrower to the extent permitted by applicable law waives and releases any error or defects in proceedings to enforce this Security Instrument and waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

10. **REINSTATEMENT PERIOD.** Borrower's time to reinstate shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

11. **PURCHASE MONEY MORTGAGE.** If any of the debt secured by this Security Instrument is loaned to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

12. **INTEREST RATE AFTER JUDGMENT.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of

1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

By SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**Sign here to execute Subordinate Security Instrument** ➤ *Angela Woods*
_____
Angela Woods
(Must be signed exactly as printed)

01 / 25 / 2022
Signature Date (MM/DD/YYYY)

**Sign here to execute Subordinate Security Instrument** ➤ *Davy Woods*
_____
Davy Woods
(Must be signed exactly as printed)

01 / 25 / 2022
Signature Date (MM/DD/YYYY)

*[Space below this line for Acknowledgement]*

STATE OF **PENNSYLVANIA**
COUNTY OF **MONTGOMERY**

On the **25** day of **JANUARY** in the year **2022** before me, the undersigned, a Notary Public in and for said State, personally appeared <u>Angela Woods and Davy Woods</u>, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person or entity upon behalf of which the person or entity acted, executed the instrument.

WITNESS my hand and official seal.

*Akia M Pleasant*
(Signature)

Notary Public: **AKIA M PLEASANT**
(Printed Name)

My commission expires: **4-17-2022**   (Notary Public Seal)

(Please ensure seal does not overlap any language or print)

> Commonwealth of Pennsylvania - Notary Seal
> AKIA M. PLEASANT, Notary Public
> Philadelphia County
> My Commission Expires April 17, 2022
> Commission Number 1223217

PACKAGE_FMC_FHA06 M102DEC21.v.3
Page 5 of 6

# EXHIBIT A

The following described property situated in the County of Montgomery, Commonwealth of Pennsylvania, to-wit:

ALL THAT CERTAIN Unit of piece of land, with the buildings and improvements erected or to be erected thereon, situate in the Township of Cheltenham, County of Montgomery, Commonwealth of Pennsylvania, being a part of "Wyngate, a Planned Community", a Declaration thereof being dated 6/16/2008 and
recorded 6/23/2008 In Deed Book 5697 page 643, bounded and described according to a Declaration Plat entitled "Wyngate, a Planned Community", drawn by Taylor Wiseman and Taylor Engineering/ Surveyors/ Scientists, Chalfont, Pennsylvania, as an Exhibit to the Fifth Amendment thereto the Declaration of
Wyngate, a Planned Community, by the Fairways at Cedarbrook Hills, L.P., a Pennsylvania Limited Partnership, the Declarant, dated 1/17/2013 and recorded 1/25/2013 at Norristown, Pennsylvania in Deed Book 5862 page 937.

BEING Unit No. 2704 Building 27

Being the same property as conveyed from The Fairways and Cedarbrook Hills, L.P., A Pennsylvania Limited Partnership, by Cedarbrook Fairways Development LLC, General Partner, by Taylor/Epstein Investment Fund, LLC, Managing Member to Angela Woods and Davy Woods, Husband and Wife, as Tenants by the Entirety as set forth in Deed Instrument #2017045373 dated 06/12/2017, recorded 06/23/2017, Montgomery County, PENNSYLVANIA.